**SO ORDERED.**

**SIGNED this 17 day of May, 2010.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

FUTURE GRAPHICS, INC.,                    CASE NO: 09-09272-8-JRL
                                                              CHAPTER 11
         DEBTOR.
_____

**ORDER DENYING MOTION TO REJECT EXECUTORY CONTRACTS**

The matter before the court is Future Graphics, Inc.'s ("Future") Motion to Reject Executory Contract or Lease and the response in opposition to that motion by Legacy Graphics, Inc. ("Legacy"). The court conducted an evidentiary hearing on the motion on April 14, 2010 in Raleigh, North Carolina.

On September 15, 2008, the debtor and Legacy executed a series of contracts known collectively as the Recapitalization and Stock Purchase Agreements ("Agreements"). On October 23, 2009, Future filed a petition under Chapter 11 of the Bankruptcy Code ("Code"). Future filed a Motion to Reject Executory Contracts on December 22, 2009 pursuant to § 365 of the Code. In response, Legacy filed an Emergency Motion to Require Identification of Executory Contracts and Motion for Extension of Time to Respond on January 8, 2010. The court entered an order granting

Legacy's motion and providing ten days for Future to specify the executory contracts sought to be rejected. On February 23, 2010, Future filed an Amended Motion to Reject Executory Contracts ("Amended Motion"). Paragraph 6 of the Amended Motion provides:

> Under the blanket of documents entitled 'Future Graphics, Inc. - Sale of Shares by Pete Reckert & Bobby Price' dated September 15, 2008, the Debtor rejects each and every agreement which it is a signatory of and has continued performance under including [binder documents]: 5, 7, 9, 10, 12, 14, 17, 18, 19, 20.

On March 9, 2010, Future and Legacy stipulated that these documents are the only contracts sought to be rejected by Future and the only documents to which Legacy must respond with regard to the Amended Motion.

## ARGUMENTS OF THE PARTIES

Future seeks court approval to reject the ten stipulated contracts. However, before Future can be awarded the relief it seeks, it must show each individual contract included in the Agreements is (1) executory and may be rejected under § 365 and (2) it is in the best business judgment of Future to reject the executory contracts. Without both showings, no contract may be rejected.

Future requests that all Agreements be set aside. That request is based on the theory that all individual contracts comprising the Agreements stand as consideration for each other. Thus, the court should view them as a whole, not separate agreements, in determining whether the contracts are executory in nature. In the alternative, if not permitted to reject all Legacy contracts, Future requests it be (1) permitted to reject and receive relief from the stipulated agreements and (2) that the remaining parties' duties under those agreements remain enforceable by Future. In support of both requests, Future asserts that the majority of the benefits under the Agreements do not inure to Future but to Future's principals. Furthermore, it is their business judgment to reject the

aforementioned stipulated agreements. According to Future, this assertion is factually supported by the fact that the sole benefit it is to receive under the agreements, the ongoing business with Legacy customers, has been abrogated by Legacy during the pendency of the chapter 11 proceeding leaving the principals of Future unable to met their contractual obligations under the "Stock Purchase Agreement – Sale by Bobby Price" (Binder Document 5) and the "Stock Purchase Agreement – Sale by Pete Reckert" (Binder Document 10).

In support of its motion, Future's vice-president, Kenneth M. Stancil ("Stancil") testified. He stated, in pertinent part, that the purpose of the agreements entered on September 15, 2008 was to allow the four shareholders of Future to come together and draft a comprehensive plan on how Future and Legacy could go forward as separate entities, but continue to work together. However, Future and Legacy are not currently working together and have not done so in three to four months. Legacy was providing 80% of Future's workload and now is diverting that work to other companies. Without the work from Legacy, Stancil testified, Future is unable to make the payments it is obligated to make under the "Shareholder Agreement," which is why that agreement along with others should be rejected. Finally, Stancil's counsel also argued that because each individual agreement is consideration for the others all of the agreements should be viewed as a collective whole and rejected as one comprehensive executory contract in accord with Future's business judgment. Id.

Legacy asserts that the stipulated agreements should not be rejected for four principal reasons. First, Legacy disagrees with Future that the collective agreements entered into on or about September 15, 2009 should be seen as one overarching agreement because the individual agreements do not stand as consideration for each other. All contracts were entered on the same day, but set

forth consideration unique to each. Legacy asserts Future has failed to meet its burden that the contracts should be rejected because there has not been a showing that the agreements at issue are in fact executory contracts. Second, the rejection would not be a sound exercise of Future's business judgment because with rejection Legacy and its principals' rights to a claim, arguably a substantial claim, for damages against Future are not disturbed. Third, no purpose would be served by the court approving the rejection because regardless of whether Future can reject, Legacy and its principals will continue to have an equitable claim against Future and its principals, which may be pursued in state court. Fourth and finally, Legacy asserts that the inequitable and unfair outcome that would come of allowing rejection of any of the Agreements exceeds the purpose of § 365.

In opposition to the motion, Legacy's president, Pete Reckert testified. In pertinent part, Reckert testified that in 2007 the four shareholders of Future decided it would be best for Price and Reckert to leave Future and create another company. Among the Agreements of September 15, 2008, a "Shareholder Agreement" was executed and was to include only the shareholders individually, i.e. Philip Killete ("Killete"), Price, Reckert, and Stancil, not Future (Binder Document 17). Reckert went on to say that payments were made under the Shareholder Agreement for some time, but for an unidentified reason the payments stopped. Future was never obligated to make the payments. At all times, the payments were to be made by Killette and Stancil as individuals. In contrast, the Confidentiality/Non-Disclosure Agreement (Binder Document 19) was contemplated and did include all parties individually and the respective corporate entities. On cross-examination, Reckert assented that it was incorrect to assume all of the individual contracts provided consideration for the others and should be looked at as one agreement. Instead, each agreement

should be examined separately to determine the rights and obligations of the parties to that individual agreement.

## ANALYSIS

[The] trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor. 11 U.S.C. § 365(a). With some limitations a debtor-in-possession has the same rights as a trustee serving in chapter 11 cases. 11 U.S.C. § 1107(a).

Before approval, the debtor must satisfy a two-step analysis. The first step, referred to as the "material breach" step, requires the court to determine whether the contract at issue is executory. Then, in the "business judgment" step, the court must determine if allowing the debtor to assume or reject the contract would be in the debtor's best business judgment. In re Sandman Associates, L.L.C., 251 B.R. 473 (Bankr. W.D. Va. 2000); Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1045 (4th Cir. 1985). Discerning whether a contract is executory is a question of law that "may be freely reviewed by successive courts" based on the facts of each case. Lubrizol, 756 F.2d at 1045. In making a decision on whether the rejection of a contract is in the best business judgment of a debtor, the court "acts in its fact-finding role." In re Sandman, 251 B.R. at 481.

The Code does not define executory contract, but Congress has ratified the application of the Countryman definition. Gloria Mfg. Corp. v. International Ladies' Garment Workers' Union, 734 F.2d 1020, 1022 (4th Cir. 1984); Lubrizol, 765 F.2d at 1043 (confirming the Fourth Circuit has adopted the Countryman definition of executory contract). Countryman defines an executory contract as:

> A contract under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of

5

> either to complete the performance would constitute a material breach excusing the performance of the other.

Gloria Mfg. Corp., 734 F.2d at 1022 (quoting Countryman, "Executory Contracts in Bankruptcy: Part I," 57 Minn. L. Rev. 439, 460 (1973)). Countryman divided potentially executory contracts into three categories: (1) those in which the non-bankrupt has performed fully, (2) those in which the bankrupt has performed fully and (3) those in which neither party has performed fully. Id. at 1022. In applying the Countryman definition of executory contracts, factual situations where only one party has completely performed [or is required to perform] are excluded from the grasp of § 365 of the Code. In re Chateaugay Corp.,102 B.R. 335, 345 (S.D.N.Y 1989). There is not a clear formula to be employed in determining what an executory contract is; instead, each contract must be reviewed within the contours of precedent and an eye towards promoting the policies of the Bankruptcy Code. In re Richmond Metal Finishers, Inc. 34 B.R. 521 (Bankr. Va. 1983).

This court has examined each agreement individually and determined that of the ten documents at issue, eight are clearly not executory contracts because they lack the requisite mutual material performance by both Future and Legacy. Those documents include the following, as they are listed in Future's Amended Motion: "Stock Purchase Agreement – Sale by Bobby Price" (Binder Document 5), "Pledge Agreement" (Binder Document 7), "General Release – Price" (Binder Document 9), "Stock Purchase Agreement – Sale by Pete Reckert" (Binder Document 10), "Pledge Agreement" (Binder Document 12), "General Release – Reckert" (Binder Document 14), "Business Agreement (between Future & Legacy)" (Binder Document 18) and "Confidentiality and Non-compete Agreement" (Binder Document 20). Because these agreements do not meet the first step of the two-step analysis for court approval of a motion to reject an executory contract, a determination on whether it would be in the best business judgment of the debtor to reject these

6

agreements is not necessary.

In applying the Countryman definition of executory contracts to the case at bar, there are two documents that require further discussion as to why they are executory contracts: Shareholders Agreement and the Confidentiality/Non-Disclosure Agreement.

The Shareholder's Agreement creates contractual obligations between Future and "all of the undersigned shareholders of [Future]." Document 17 at 1. By the terms of the agreement, each shareholder is to refrain from making transfers of restricted shares, which are described as voting and non-voting stock. In the event a shareholder desires to transfer restricted shares, he must provide Future with a written offer that may be formally adopted by a majority of the voting shares. If not formally adopted by Future, the shareholder must then offer the shares to Killete and Stancil. Id. at 2,3. Specific formats and delivery requirements for the offers to the respective parties are also listed in the agreement. Along with the preceding provisions, there are also headings for: Death Buy Out, Disability, and Miscellaneous.

Under the Shareholder Agreement, Future is obligated to consider any offers to transfer shares presented to it in the proper format, reimburse Reckert for the commissions lost when he accepted a position with Future, and to distribute dividends to cover any taxes due because of Future's S Corporation status. Document 17 at 16,17. Each shareholder individually is obligated to follow the given protocol if and when they desire to transfer shares; use any proceeds from the transfer to repay any and all outstanding loans extended by the Corporation or the purchasing shareholder; and refrain from diluting the ownership interest of Price or Recekert, without their express written consent. Id. at 2-3, 7, 18. Killette and Stancil, in their individual capacities, are

obligated under the Shareholder Agreement to accept responsibility for any debt and recovery associated with the lawsuit involving Eli Research in equal percentages. Id. at 16.

This court is satisfied that the Shareholder Agreement is executory because both Future and the shareholders have some continuing obligation that if unperformed would be a material breach of the contract.

The Confidentiality/Non-Disclosure Agreement acknowledges the likelihood that non-public information will be exchanged between Future, the principals of Future, Legacy and the principals of Legacy. Based on the language of the document, it seems all parties entered the agreement in an attempt to protect the confidentiality and secrecy of the non-public information exchanged and each party is obligated: (1) not to disclose any non-public information except as otherwise agreed in writing; (2) not to improperly use *(which is specifically defined)* any confidential information; (3) to safeguard and return any confidential information reduced to writing; (4) in the event of compelled disclosure, to provide other parties with written notice of such communication or disclosure; and (5) notify the other parties of any actual or threatened breach of this agreement. The agreement at issue was executed by both Future and Legacy and the principals of each corporation in their individual capacities. When there are unperformed obligations due by both the bankrupt and non-bankrupt parties there is an executory contract. Gloria Mfg. Corp., 734 F.2d at 1021. Thus, the aforementioned obligations flow between both parties and create an executory contract.

The debtor must make a showing of how rejection of executory contracts will benefit the estate. In re Stable Mews Associates, Inc., 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984), citing In re Matter of Minges, 602 F.2d 38 (2nd Cir. 1979); In re Old Carco LLC, 406 B.R. 180, 192 (Bankr. S.D.N.Y. 2009). "The primary element of such a showing is the extent to which a rejection will

benefit the general unsecured creditors of the estate." Id. When applying the business judgment rule, "[there is] no room for speculation as to which business choice will yield the greater return;" the analysis is complete "once it has been shown that the [debtor's] choice will benefit the estate and unsecured creditors." In re Maison Grande Condominium Ass'n., Inc., 425 B.R. 684, 691 (S.D. Fla. 2010); see also In re Chi-Feng Huang, 23 B.R. 798, 800-802 (B.A.P. 9th Cir. 1982) (while determining if the estate and unsecured creditors will benefit a balancing of interests is employed … it is proper for a court to refuse to approve rejection where a party whose contract to be rejected would be damaged disproportionately to any benefit to be derived by general creditors).

Future states in its Amended Motion that it believes most benefits under the Agreements flow through to its principals and for that reason it is in Future's best business judgment to reject the Agreements. While giving the deference due under the business judgment rule, Future's conclusory statement without any supporting facts is insufficient to meet the burden set for the debtor when moving to reject contracts. The court has not been provided with any evidence of how rejection will benefit the estate or the unsecured creditors.

Additionally, the court finds that if the contracts were rejected, Legacy and its principals' rights to enforce the Confidentiality /Non-Compete Agreement through an injunction would remain because the relief sought there cannot be reduced to money damages. A right to an equitable remedy for breach of performance is a claim if the breach gives rise to a right to payment. 11 U.S.C. §101(5)(B). When the payment of money damages is permissible in lieu of an equitable remedy, the right to payment is available and there is a claim to be made. If money damages are not permissible, only equitable relief is available and remedies for the breach may be pursued outside

of the bankruptcy proceedings.  In re The Ground Round, Inc., 335 B.R. 253 (B.A.P. 1st Cir. 2005); see In re Kmart Corp., 297 B.R. 525 (N.D. Ill. 2003).

North Carolina law is clear that an injunction is the proper remedy to prevent the prohibited disclosure of confidential information and restrain a party from willfully violating a valid confidentiality or non-compete agreement.  Orkin Exterminating Co. v. Wilson, 40 S.E.2d 696, 699; see Travenol Laboratories, Inc. v. Turner, 228 S.E.2d 478 (N.C. App. 1976) (injunction will issue to prevent unauthorized disclosure and use of trade secrets and confidential information) Barr-Mullin, Inc. v. Browning, 424 S.E.2d 226 (N.C. App. 1993) (injunction may be issued to prevent unauthorized disclosure and use of trade secrets and confidential information).  The availability of injunctive relief furthers the notion that there would be no benefit to Future if the contracts were rejected.  For that reason, this court will not approve the two agreements deemed executory to be rejected.

## CONCLUSION

The court finds that the agreements cannot be accepted or rejected as a whole. Each agreement must be analyzed singly to determine whether the requisite material performance was due by both parties at the time of filing.  Two of the ten agreements sought to be rejected are executory contracts, but cannot be rejected because to do so would not create an economic benefit for Future.

Due to the debtors' inability to (1) establish that the contracts sought to be rejected are executory in nature and (2) the rejection of the contracts proven executory is in the best business judgment of the debtor, the motion is **DENIED**.

**END OF DOCUMENT**